UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                          :

AIXA RODRIGUEZ,                               :

                Plaintiff,                   :           08 Civ. 1012 (PAC)

   -against-                                 :

                                         :           <u>OPINION & ORDER</u>

INTERNATIONAL LEADERSHIP CHARTER  :
SCHOOL and ELAINE RUIZ-LOPEZ,        :

              Defendants.              :

---------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>March 30, 2009</u>

       HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiff Aixa Rodriguez ("Rodriguez") claims that she was fired from her teaching job because she complained about sub-par educational services provided to "special needs students," i.e., students with disabilities and students who required English as a Second Language ("ESL") instruction.  Her Complaint alleges seven causes of action: one for a violation of her First Amendment free speech rights pursuant to 42 U.S.C. § 1983, and six for retaliation on the basis of race, national origin, and disability pursuant to several federal and state statutes.

       Defendants International Leadership Charter School ("ILCS"), Rodriguez's former employer, and Dr. Elaine Ruiz-Lopez ("Ruiz-Lopez"), ILCS's Chief Executive Officer, move to dismiss Rodriguez's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, Defendants' motion to dismiss Rodriguez's Complaint is GRANTED in part and DENIED in part.

**BACKGROUND**

**I.     Facts**[1]

Defendant ILCS is a tuition-free high school operating under a charter granted by the State University of New York Board of Trustees, pursuant to the New York State Education Law.  At all times relevant to the present matter, Defendant Ruiz-Lopez served as ILCS's Chief Executive Officer.

Plaintiff Rodriguez was hired to teach at ILCS in July 2006.  Some of the students for whom she was responsible were either disabled or required ESL instruction.  According to Rodriguez, ILCS failed to provide these special needs students with certain educational services to which they were legally entitled.  Rodriguez complained about these failures, but Defendants did not take any corrective action.

On November 9, 2006, Rodriguez wrote a letter to the New York Department of Education detailing her concerns.  On November 27, 2006, Department of Education representatives visited ILCS to investigate Rodriguez's complaints.

Defendants subsequently learned that Rodriguez was the source of the complaints, and they fired her on December 15, 2006.  On January 19, 2007, the Department of Education substantiated the complaints contained in Rodriguez's November 9, 2006 letter and directed Defendants to take corrective action with respect to the educational services provided to special needs students.

On March 3, 2007, Rodriguez filed a complaint of discrimination with the New York State Division of Human Rights ("NYSDHR"), which in turn forwarded her complaint to the Equal Employment Opportunity Commission ("EEOC").  (Decl. of Aixa Rodriguez ("Rodriguez Decl.") Ex. 1.)  On March 6, 2007, the EEOC issued a Notice of

---

[1] The facts in this section are taken from Rodriguez's Complaint ("Compl.") unless otherwise noted.

2

Charge of Discrimination, which it served on ILCS, indicating that Rodriguez charged ILCS with employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  (Id. Ex. 2.)

## II. Plaintiff's Complaint and Defendants' Motion to Dismiss

Rodriguez's Complaint alleges seven causes of action.  Her 42 U.S.C. § 1983 claim alleges a violation of her First Amendment free speech rights.  The remaining six causes of action amount to claims of retaliation pursuant to various federal statutes—Title VII; the Americans with Disabilities Act ("ADA"); the Rehabilitation Act; and 42 U.S.C. § 1981—as well as the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").[2]  Rodriguez's Title VII, ADA, and Rehabilitation Act claims are brought against ILCS only; the remaining claims are brought against both ILCS and Ruiz-Lopez.

Defendants move to dismiss Rodriguez's Complaint on four grounds.  First, with respect to her First Amendment claim under Section 1983, Defendants argue that Rodriguez has failed to demonstrate either that ILCS was a state actor for the purposes of a First Amendment claim or that her complaints constituted protected speech.  Second, they argue that Rodriguez's ADA and Rehabilitation Act claims must be dismissed pursuant to Rule 12(b)(1) because, prior to commencing the present action, Rodriguez did not exhaust her administrative remedies by raising these alleged violations with the EEOC.  Third, Defendants contend that the NYSHRL and NYCHRL claims must be

---

[2] Rodriguez styles each of her retaliation claims as stemming from Defendants' "unlawful discriminatory employment practices based on race, national origin, hostile environment and retaliation, in violation of" the particular statutes.  (See Compl. ¶¶ 35, 37, 39, 41, 43, 45.)  At a pre-motion conference before this Court on June 10, 2008, Rodriguez's counsel characterized her action as "in the first instance a retaliation case for complaints about disability, national origin and race discrimination because of the students that she was complaining about…." (Pre-Motion Conf. Tr. at 3:19-22.)

3

dismissed because Rodriguez did not comply with the New York State Education Law's notice of claim requirements, which require service of a written notice of a claim on the school and its officials within 90 days of the incident that allegedly caused the complainant's injury.  Finally, Defendants argue that Rodriguez's Title VII and Section 1981 claims must be dismissed because Rodriguez has failed to allege that she engaged in the types of activities these statutes are meant to protect.

## DISCUSSION

### III.    Legal Standard for a Motion to Dismiss

On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court may dismiss a claim where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle her to relief.  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).  Although "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

### IV.    First Amendment Claim Pursuant to Section 1983

Rodriguez's First Amendment free speech claim lies at the heart of her Complaint—although she proceeds to state causes of action under a number of additional federal and state statutes, each of those causes of action relates back to her core contention that "[D]efendants fired [her] in retaliation for her complaints of

discriminatory and illegal conduct" towards ILCS's special needs students.  (Compl. ¶ 27.)

In order to state a claim under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by an entity acting under color of state law; and (2) the conduct deprived the plaintiff of constitutional rights.  Fierro v. City of New York, 591 F. Supp. 2d 431, 438 (S.D.N.Y. 2008) (citing Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004)).

The parties dispute whether ILCS, as an independent charter school, acted "under color of state law" when it fired Rodriguez.  The Supreme Court's decision in Rendell-Baker v. Kohn, 457 U.S. 830 (1982), which held that a private school's receipt of significant public funds does not necessarily turn its employment decisions into "acts of the State," id. at 840, suggests that ILCS would not be a state actor for First Amendment purposes.

Even if ILCS is a state actor, however, Rodriguez's First Amendment claim still fails.  In order to establish a prima facie First Amendment retaliation claim, a plaintiff must demonstrate that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) a causal connection existed between her speech and the adverse action.  Zelnick v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006).  The Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), teaches that although a public employee does not surrender all of her First Amendment rights by reason of her employment, her speech is only protected when she is speaking "as a citizen, on a matter of public concern."  Id. at 418.  By contrast, speech made pursuant to the employee's professional duties is not constitutionally protected.  Id. at 421.

Following Garcetti, the Second Circuit held that teachers, such as Rodriguez, are not speaking on matters of public concern, but rather are speaking pursuant to their professional duties, when they complain to superiors on behalf of their students. Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed. Appx. 66 (2d Cir. 2008), held that a special education counselor's complaints to her superiors "regarding [a special needs student] and the lack of physical education and art classes at the [school] were made pursuant to her 'official duties' as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress." Id. at 68. Similarly, in Pearson v. Board of Education, 499 F. Supp. 2d 575 (S.D.N.Y. 2007), the court held that complaints by the plaintiff teachers about a colleague's sexual harassment of female students were made in the teachers' official capacities and therefore did not constitute protected speech under Garcetti. Id. at 588-89. In light of these decisions, even at the motion to dismiss stage, it is clear that Rodriguez's speech was made in her official capacity as a teacher and is not protected by the First Amendment.

Rodriguez attempts to distinguish Garcetti, Woodlock, and Pearson on the grounds that she, unlike the plaintiffs in those cases, "complained to a totally independent state agency….[T]his was not within her job duties." (Transcript of Oral Argument on Feb. 4, 2009 ("OA Tr.") at 17:25-18:2.)  In other words, Rodriguez argues that her letter to the Department of Education was protected speech because she acted outside of her chain of command.

Rodriguez relies on Rosenblatt v. City of New York, No. 05 Civ. 5521 (GEL), 2007 WL 2197835 (S.D.N.Y. July 31, 2007), which dealt with a municipal employee who was responsible for assessing the eligibility of applicants for publicly funded

6

daycare services. She suspected her superiors of fraud and lodged a complaint against them, not with her agency, but with the Inspector General of New York City's Public Assistance and Grants Unit. Id. at *6. The court held that the plaintiff's complaint constituted protected speech, not because it was made to an outside agency, but rather because it involved issues that did not fall within the parameters of her official duties. Id. In other words, the Rosenblatt decision—like Garcetti, Woodlock, and Pearson—turned on the substance of the plaintiff's speech in relation to her job duties; not, as Rodriguez claims, on the identity of the individual to whom her complaint was directed.

As a teacher assigned to special needs students, Rodriguez had a professional duty to attend to her students' educational needs. When she complained to ILCS and, eventually, to the Department of Education that these needs were not being met, she did so in an official capacity, not as a private citizen on a matter of public interest. Her First Amendment claim is therefore dismissed.

**V.    ADA and Rehabilitation Act Claims**

Next, Defendants argue that Rodriguez's ADA and Rehabilitation Act claims must be dismissed because she failed to exhaust her administrative remedies by raising these claims with the EEOC. (Def. Mem. at 4-6.) In partial support of their contention, they point out that the notice served by the EEOC on Defendants marked the box for a Title VII claim but not the box for an ADA claim. (Def. Mem. at 5; Bogdan Aff. Ex. A.)

Rodriguez argues that she did exhaust her administrative remedies with respect to the ADA claim because: (1) the EEOC charge incorporated her NYSHRD complaint, which in turn sufficiently pled her ADA claim; (2) the fact that only the Title VII box was checked on the EEOC notice is not fatal to her ADA claim; and (3) her ADA claim is

7

reasonably related to her Title VII claim. (Id. at 2-5.) With respect to the Rehabilitation Act, Rodriguez contends that she did not need to exhaust her administrative remedies. (Id. at 5-6.)

### A. ADA Claim

A plaintiff may bring an ADA retaliation claim only after she has filed a timely charge with the EEOC or equivalent state agency. See DiProjetto v. Morris Protective Serv., 489 F. Supp. 2d 305, 307 (W.D.N.Y. 2007). On its face, Rodriguez's EEOC charge does not include a claim under the ADA—her claim is solely styled as a Title VII claim, and the box for an ADA claim is unchecked. (See Bogdan Aff. Ex. A.)

The Second Circuit has held, however, that "[c]laims not raised in an [administrative] complaint…may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." DiProjetto, 489 F. Supp. 2d at 307 (citation omitted). In effect, the Second Circuit has recognized a loose pleading standard for administrative claims. In determining whether a cause of action is related to the EEOC charge, "the court must look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Bridges v. Eastman Kodak Co., 822 F. Supp. 1020, 1026 (S.D.N.Y. 1993) (citations and internal quotation marks omitted).

In the present matter, the Court finds that Rodriguez's ADA claim is reasonably related to the Title VII charge she filed with the EEOC. Rodriguez's charge mentions "special education" and claims that she "went on record with VESID" (i.e., Vocational and Educational Services for Individuals with Disabilities, an office of the New York

State Education Department) regarding her concerns. (See Bogden Aff. Ex. A at 6.) The EEOC investigation that could reasonably be expected to grow out of the charge would therefore extend beyond the Title VII claim to encompass the ADA claim Rodriguez now brings in this Court. Rodriguez exhausted her administrative remedies with respect to her ADA claim, and Defendants' motion to dismiss this claim is denied.

### B. Rehabilitation Act Claim

Although plaintiffs must exhaust administrative remedies under the Rehabilitation Act before bringing a claim against a federal employer, they need not do so when their claim is instead against a recipient of federal funding. Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1253-54 (D. Kansas 2006) (describing the difference between Rehabilitation Act claims against federal employers, which follow the remedial scheme of Title VII and require exhaustion of administrative remedies, and claims against recipients of federal funding, which follow the remedial scheme of Title VI of the Civil Rights Act and therefore do not require exhaustion). In Ryan, the court held that a physical therapist allegedly terminated for complaining about the defendant school district's provision of services to disabled students was not required to exhaust her administrative remedies before bringing a retaliation claim under the Rehabilitation Act. Id. at 1254. ("In this case, the defendant school district is a recipient of federal funding, not a federal employer….Therefore, plaintiff was not required to exhaust her administrative remedies before filing suit.")

Likewise, in the present matter, Rodriguez brings her Rehabilitation Act claim against ILCS, which receives federal funds but which is not a federal employer. Under

the relevant remedial scheme of the Rehabilitation Act, she was not required to exhaust administrative remedies for this claim and Defendants' motion to dismiss must be denied.

## VI. NYSHRL and NYCHRL Claims

Defendants argue that Rodriguez's NYSHRL and NYCHRL claims must be dismissed because, pursuant to New York Education Law § 3813(1), she was required to serve a notice of claim on ILCS and its officials within 90 days of the incident allegedly causing her harm.[3]  (Def. Mem. at 6-8.)  They contend that this requirement is strictly enforced, and is not satisfied by filing a complaint with the EEOC.  (Id. at 6-7.)  Defendants further contend that the notice of claim requirement extends to charter schools such as ILCS.  (Id. at 7-8.)

Rodriguez argues that she was not required to file a notice of claim because she seeks, in part, to vindicate a public interest.  (Pl. Opp. at 6-7.)  She also claims that the EEOC charge provided Defendants with sufficient notice of her claims.  (Id.)  Lastly, she contends that the notice of claim provisions do not apply to charter schools and their employees.  (Id. at 7.)

"[F]ulfillment of the statutory requirements for filing a notice of claim is a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation…is a fatal defect."  Scaggs v. N.Y. State Dep't of Educ., No. 06-Civ.-0799 (JFB) (VVP), 2007 WL

---

[3] New York Education Law § 3813(1) provides:
> No action or special proceeding, for any cause whatever…shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school…or any officer of a school district, board of education, board of cooperative educational services, or school…unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim….

N.Y. Educ. Law § 3813(1).

10

1456221, at *19 (E.D.N.Y. May 16, 2007). While courts have recognized an exception to the notice requirement where the plaintiff's claim seeks to vindicate a public interest, see id. at *19-*20, it is equally clear from the case law that Rodriguez's claims do not meet this standard. In Scaggs, for example, the court found a public interest sufficient to waive the notice requirement where the plaintiff students sought the provision of adequate educational services for themselves, and where their claim, if successful, would have had an impact on similarly situated students. See id. at *20. In the present matter, although Rodriguez claims she was retaliated against for complaining about Defendants' treatment of special needs students, none of her causes of action seek to vindicate the rights of either ILCS's special needs students or special needs students more generally. Instead, she merely seeks damages related to the termination of her employment.

Rodriguez's argument that the notice of claim requirement does not apply to ILCS is unavailing. Courts have held that charter schools are public schools for the purposes of the notice of claim requirement. See Scaggs, 2007 WL 1456221, at *19 n.17. Moreover, the bulk of the case law in this District supports the conclusion that EEOC claims do not satisfy the notice of claim requirement. See, e.g., Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193, 196 n.1 (S.D.N.Y. 2006) (collecting cases). Rodriguez's failure to provide Defendants with proper notice is therefore fatal to her NYSHRD and NYCHRD claims.

## VII. Title VII and Section 1981 Claims

Finally, Defendants argue that Rodriguez's Title VII and Section 1981 claims must be dismissed because her Complaint does not allege that she was retaliated against

for engaging in the types of activities these statutes were designed to protect. (Def. Mem. at 8-13.) [4]

### A. Title VII Claim

Title VII requires that plaintiffs demonstrate they were retaliated against because they complained about employment discrimination based upon race or national origin. See, e.g., Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999). Rodriguez does not claim that her special needs students suffered an adverse employment action because of their race or national origin. Instead, she claims that she suffered an adverse employment action because she advocated on her students' behalf. Title VII does not cover such activity. In Evans v. Kansas City, Missouri School District, for example, the court held that a teacher's claim for retaliation due to her criticism of her school's failure to comply with a desegregation mandate did not give rise to a cause of action under Title VII. 65 F.3d 98, 101 (8th Cir. 1995). Similarly, Rodriguez's contention that her students were discriminated against because of their race or national origin cannot give rise to a Title VII claim because the students' employment rights were not violated.

### B. Section 1981 Claim

"[Section] 1981…has a specific function: It protects the equal rights of all persons within the jurisdiction...to make and enforce contracts without respect to race."

---

[4] Defendants make the same argument with respect to Rodriguez's NYSHRL and NYCHRL claims. (Def. Mem. at 8-13.) Because the Court has already determined that these claims must be dismissed due to Rodriguez's failure to comply with the state notice of claim requirement, see infra Part VI, it need not reach the issue of whether these claims should also be dismissed for failure to state a claim. Nevertheless, given that "[t]he same standards that apply to Title VII and Section 1981 employment discrimination claims are applicable to claims brought under the [NYSHRL] and the [NYCHRL]," Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827 (DAB), 2007 WL 2981465, at *10 (S.D.N.Y. Oct. 10, 2007), the Court's analysis of Rodriguez's Title VII and Section 1981 claims would apply with equal force to her state law claims had the notice requirement been met.

Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006). Where a plaintiff's allegations do not "encompass[] a complaint of retaliation against a person who has complained about a violation of another person's contract-related 'right,'" the plaintiff's claim should be dismissed. See CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1954 (2008).

Rodriguez's does not allege that Defendants violated her students' contract-related rights because of the students' race or national origin. She is bringing a claim related to her own employment. Her Section 1981 claim must therefore also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Rodriguez's Section 1983, Title VII, Section 1981, NYSHRL, and NYCHRL claims. It is DENIED with respect to her ADA and Rehabilitation Act claims. The parties are hereby directed to provide the Court with a civil case management plan on or before Friday, April 24, 2009.

Dated: New York, New York
       March 30, 2009

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

13